Francisco Quiñones Cherena, Appellant, v. The Registrar of Property of San Germán, Respondent.

No. 1031.  Submitted November 7, 1938.—Decided January 24, 1939.

*Negrón López & Negrón López,* for appellant; the Registrar appeared by brief.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On presentation in the Registry of Property of San Germán of public deed No. 97 of August 3, 1938, executed before notary public José A. Negrón Flores, by virtue of which the spouses Francisco Fernández and Ramona Rodríguez segregated from a property belonging to them a certain parcel of land which they sold to Francisco Quiñones, the registrar refused to record the same "because it appears that no plan of the parcel of land segregated and sold, approved by the

Commissioner of the Interior, has been accompanied, as required by Joint Resolution No. 55 of the Legislature of this Island approved May 15, 1937, and as provided by the Congress of the United States regarding the validity of legislative resolutions of this Island; . . . . ''

The purchaser filed this administrative appeal from the above decision and has assigned four errors committed by the registrar as follows: (1) in holding that Joint Resolution No. 55 of May 15, 1937, requires the presentation of plans in the Registry of Property; (2) that the provisions of said Joint Resolution, even if referring to the presentation of plans in the Registry of Property, are mandatory and not directory; (3) that the failure to present the plan constitutes an incurable defect, and (4) that Joint Resolution No. 55 of May 15, 1937, is in force, since the same was declared void by this court and has not been re-enacted by the Legislature of Puerto Rico.

The appellant desisted; rightly in our opinion, from the fourth assignment, because although it is a fact that this Supreme Court held in *Nazario* v. *Registrar,* 53 P.R.R._____, that Joint Resolution No. 55 of 1937 (Sess. Laws, 1937, p. 629) was unconstitutional and void as having been approved in contravention of the provisions of section 34 of the Organic Act, it is also a fact that the Congress of the United States, on June 16, 1938, passed a bill which reads as follows:

'' . . . That all and each and every of the joint resolutions passed at any time by the Legislature of Puerto Rico or by the former legislative assembly, and approved by the Governor, be, and the same are hereby, in all things ratified, approved, and confirmed; and all acts done, contracts and conveyances made or entered into or issued or delivered or accepted or received, including bonds, deeds, and transfers of real or personal property or easements or intangible or inchoate rights, and documents and papers of every character made, taxes collected and the collection thereof, disbursements of money made and warrants therefor, and all other steps, acts, judgments, decrees, and proceedings of any and every kind or nature entered into, made, done, taken, had, executed, issued, delivered, or

received or accepted under or by virtue of any such joint resolution, either of the Legislature of Puerto Rico or of the former legislative assembly, be, and the same are hereby, in all things legalized, ratified, and confirmed and validated as fully to all intents and purposes, and to have the same effect, validity, operation, and effectiveness as though all and each and every of such joint resolutions had originally been enacted, validly, and approved by the Governor, in the form of 'Acts' of the legislature and of the legislative assembly, respectively, instead of in the form of 'joint resolution.' '' (Public —No. 641—75th Congress, Chapter 460—3rd Session, H. R. 10652.)

As regards the first and second assignments of error we will say that they are without merit, in conformity with previous decisions of this court in *United States of America* v. *Registrar,* 53 P.R.R.____; *Fermoso* v. *Registrar,* 52 P.R.R. ____; and *Molini* v. *Registrar,* 52 P.R.R.____. In *United States of America* v. *Registrar, supra,* this court, through Mr. Justice de Jesús, expressed itself as follows:

"The primary object of the legislation under consideration, as appears from its context as a whole and especially from its title and preamble, is to aid in the preparation of a catastral plan of the Island of Puerto Rico. There are also stated in said preamble other advantages of a secondary order that would ensue from such legislation.

.    .    .    .    .    .    .    .    .    .

"The presentation of plans for their approval and filing by the Commissioner of the Interior is not made mandatory by section 1; but wishing perhaps to emulate the framers of the Mortgage Law in their endeavor to compel the interested parties to present their titles in the registry of property, the law-maker, having the same purpose in view regarding the plans, makes their presentation indirectly compulsory by providing in section 2 that no copy of plans not previously approved by the Commissioner of the Interior of Puerto Rico shall be accepted in the registries of property, courts of justice, or government offices of this Island. It is a common practice in courts of law to present in evidence and accompany as exhibits plans of rural and urban estates. Although not so often, plans are also presented in administrative centers in connection with administrative business. Such is not the case, however, in registries of property where the presentation of plans is not required either

by the Mortgage Law or by any other legislation. Section 7 comes in then to supply the omission by requiring that a plan of every segregation or grouping of any property or properties shall be presented, which, of course, under section 2, must be approved by the Commissioner of the Interior. For the above purpose, the lawmaker might have gone still farther and required the presentation of plans not only where a segregation or grouping was sought to be recorded, but also in the case of the record of any other transaction in the registry of property. The failure to go thus far does not affect, of course, the effectiveness of the legislative provision. The fact that a plan should be unnecessary in order to effect a record in the registry or that it is not the duty of the registrar to file such plan is not a bar to the validity of section 7, since, as already stated by us, the aim sought by the lawmaker is to secure indirectly the submission of plans to the Commissioner of the Interior for his approval, thus increasing the number of cases where such approval and filing become necessary, with the result that their accumulation in greater numbers will aid in the preparation of the catastral plan.

"For the purpose of the registry, the legislative provision would be complied with by attaching the plan to the instrument sought to be recorded, the same to be then returned by the registrar to the interested party after the record is made, with a statement by him in the memorandum of registration as well as in the record entry thereof to the effect that the plan was presented to and had in view by the registrar as required by law.

"The fact that no further practical end would be served by the legislation under consideration is immaterial. It is not within the province of courts to go into a consideration of the intrinsic merits of a law. This devolves upon the legislative branch and not upon the judicial whose duty is confined to the application and construction of laws."

It having been held that the joint resolution under consideration mandatorily requires the presentation in the registry of property of the plan of segregation, let us examine the effect of the failure to comply with such provision upon the record of the deed of sale of the property segregated and we will thereby take up the consideration of the third assignment of error.

We know that the registrar refused to record the deed in question exclusively on the ground of the failure to present

the plan. Could he do that? According to section 2 of the joint resolution in question, "no copy of plans not previously approved by the Commissioner of the Interior of Puerto Rico shall be admitted in the registries of property, etc.," and further on it is provided by section 7 that "a plan of every segregation or grouping made in regard to any property or properties shall be presented, and the part segregated or the properties grouped shall be shown thereon."

Therefore, it only establishes an obligation that must be fulfilled. If fails to provide that the failure to comply with such a duty should bar the record of any contract connected therewith.

Such being the case, we must refer to the Mortgage Law itself in order to ascertain when the record must be refused or when the same shall be made with a statement of the curable defect or defects that might be pointed out by the registrar.

Article 65 of the said Mortgage Law, as amended by Act No. 20, Sess. Laws of 1926, Third Special Session, p. 152, approved July 9, 1936, in its pertinent part reads as follows:

"Article 65.—*Curable defects shall be those which affect the validity of an instrument without necessarily producing the nullity of the obligation therein constituted.*

"Registrars shall not suspend the record, entry or cancellation of any instrument by reason of curable defects. The defects which the instrument may have shall be set forth in the record and whenever the necessary documents are presented for correcting the defects in the instrument, such correction shall be set forth by means of a marginal note.

"*Incurable defects shall be such as necessarily render* the obligation null and void.

. . . . . . . . . . "

(Italics ours.)

Neither the failure to draw up the plan nor the omission to present the same in the registry necessarily renders null and void the deed sought to be recorded. Such defect, therefore, cannot be termed incurable. Nor can it be alleged either

'that the failure to present such plan affects the validity of the title. Nor, strictly speaking, can such defect be called curable.

Now, the point under consideration being the failure to comply with a legal requisite, it seems to us logical that the registrar should set forth such failure so that, pursuant to the essential purpose of registries of property, prospective parties to any transaction regarding realty should be clearly advised as to the omission of something that they might require for their protection. It is in this respect, we think, that the failure to present the plan can and must be made to appear as a curable defect, since it is really something that should have been but was not done and that can be done afterwards, thus supplying the omission.

For the foregoing reasons the decision appealed from must be reversed and the record prayed for ordered with the defect indicated.